W. W. LYONS et al., Appellants, v. J. J. VAN OEL et al., Appellees.

**INJUNCTION:** Subjects of Protection and Relief—Contracts—
1 Breaches. Injunction will lie to restrain one party to a contract from so proceeding under the contract as to involve all the parties in obligations not authorized or contemplated by the contract. So held where the parties agreed to first organize a corporation, and thereunder to carry on a sand and gravel business; but one of the parties proceeded to carry on the business without the organization of the corporation.

**PARTNERSHIP:** The Relation—Necessity for Contract Relation.
2 Principle recognized that, where the rights of third parties are not involved, a partnership cannot exist, in the absence of a contract so providing.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

DECEMBER 10, 1917.

REHEARING DENIED MARCH 15, 1918.

ACTION for an injunction. Opinion states the facts. Decree for the defendants in the court below. Plaintiffs appeal.—*Reversed and remanded.*

*Read & Read* and *W. E. Miller,* for appellants.

*Clark, Byers & Hutchinson,* for appellees.

GAYNOR, C. J.—On the 4th day of December, 1913, the

following memorandum of agreement was signed by both plaintiffs and defendants herein:

"Memorandum of agreement by and be-

1. INJUNCTION:
subjects of
protection and
relief: con-
tracts:
breaches.
tween W. W. Lyons and L. W. Lyons, parties of the first part, and J. J. Van Oel and Will Van Oel, parties of the second part:

"It is hereby understood and agreed that the above-named parties are to enter into and operate a sand and gravel business under the name of The Beaver Valley Sand and Gravel Co., to be incorporated and run for a term of twenty years if certain plans and conditions are carried out to the satisfaction of both parties. These plans being as follows:

"First: That the above-named J. J. Van Oel and Will Van Oel (parties of the second part, now engaged in business such as to meet and know contractors and builders throughout this state), are to secure contracts for sand and gravel to the amount that would warrant the building of a switch and track extending from The Perry Interurban to certain beds of sand and gravel located on a certain farm belonging to W. W. Lyons (consisting of 180 acres and lying between The Des Moines River and Beaver Ave.), furthermore, these contracts shall be sufficient to warrant the buying of machinery, sand pumps, and such other apparatus that is needed to operate such a business not to exceed $6,000 to $8,000.

"Second: It is understood that J. J. Van Oel and Will Van Oel, parties of the second part, do not receive any consideration for securing above contracts only in the way of getting said sand business in running condition. After such time, they may both be reimbursed to the amounts agreed upon by both first and second parties. Sand, shovels and machinery to be located at any point the said J. J. Van Oel may choose to locate so that it is above the south end of the river pasture and above a point directly east of

the barn. The said W. W. Lyons agrees in permitting the said company to operate and remove and sell the sand and gravel from said location that he will secure right of way and also assist in securing a switch track from Interurban Ry. Co., the said J. J. Van Oel to furnish all machinery, tools and equipment necessary to carry on the business, not to exceed from $6,000 to $8,000. There being uncertainty as to the terms on which The Railway Co., will construct a switch, it is agreed that the expense shall be paid from the undivided profits of the business and that the salaries of the parties who are entitled to salaries under this contract, shall not exceed two thirds as named or agreed upon as salaries until the amount assumed be paid for switch track.

"When all machinery is installed, track in and business in running condition, it is agreed that J. J. Van Oel shall receive a salary of $3,000 per year and L. W. Lyons a salary of $1,500 per year and Will Van Oel a salary of $1,500 per year. At the end of the year or every six months, if so agreed, the profits are to be divided; W. W. Lyons and L. W. Lyons to receive one half of the net profits and J. J. Van Oel and Will Van Oel a like amount.

"It is also agreed that the said J. J. Van Oel and his associates shall have the exclusive right, unless otherwise mutually agreed, to all the sand and gravel described to be on premises stated in this contract for the term of years above named."

On the margin of said agreement was written the following:

"Said W. W. Lyons authorizes the Sand & Gravel Company to get gravel and sand from the river bed at any place along the east line of said farm."

It appears that the parties have never incorporated. It is the claim of the plaintiffs that this was a tentative agreement to incorporate; that the agreement itself is too vague

and indefinite as a basis for incorporation; that it does not fix definitely, and provides no means by which the amount of capital stock may be definitely determined; that it does not fix the highest amount of indebtedness to which the corporation may subject itself at any time; that it does not fix a time for the commencement or the termination of the corporation, by what officers or persons its affairs are to be conducted, or the times when or the manner in which they shall be elected; that, in fact, no compliance with the provisions of Chapter 1, Title IX, of the Code of 1897, is provided for to effect incorporation; that there is nothing authorizing the parties to said tentative agreement to bind each other by contract; that this agreement, in so far as it undertook to bind the corporation, is void, and cannot be enforced. In fact, it is claimed that the tentative agreement is too vague and indefinite to be an enforcible instrument.

It is claimed that the defendants, however, have assumed to act under said agreement without incorporation, and to make contracts by which these plaintiffs are sought to be bound; that they are assuming the right to take possession of the land mentioned in the contract, and to take sand therefrom, over the objection of the plaintiffs. Plaintiffs pray that the contract be cancelled and held for naught; that the defendants be enjoined from claiming or asserting any rights under it; that they be enjoined and restrained from contracting any obligations of any kind, under said writing, which will be binding on these plaintiffs; and that the defendants and each of them be restrained from selling or attempting to sell sand or gravel underlying the premises described in the contract belonging to the plaintiffs; and that they be enjoined from claiming any interest in the premises described in the contract, or the gravel underlying the same.

The contract is inartificially drawn. As we interpret

it, and as we take it the parties understood at the time, the thought was to incorporate, and as a corporation to operate a sand and gravel business under the name of the Beaver Valley Sand & Gravel Company, and we think the contract should be so read; in the light of the record. It is clear that the parties understood and agreed to incorporate, and as such, operate a sand and gravel business, under the name of the Beaver Valley Sand & Gravel Company, for a term of twenty years, but only in the event that certain plans and conditions were carried out, to the satisfaction of both parties. These plans and conditions which must be satisfactory to both parties are: That the Van Oels should secure contracts for sand and gravel, to an amount that would warrant the building of a switch and track extending from the interurban line to certain beds of sand and gravel located on the farm of W. W. Lyons, and such as would warrant the buying of machinery and sand pumps, and such other apparatus as is needed to operate the business, not exceeding a definite amount; but that the Van Oels should receive no consideration for securing the contracts, except as they might profit thereby in the operation of the business; that, after the business was incorporated and in operation, the parties should be reimbursed for expenditures to an amount agreed upon by both parties; that, after the incorporation was effected, the Lyons would permit the company to remove and sell sand and gravel from the premises mentioned in the contract, and also would secure the right of way to the sand, and assist in securing switch tracts, the Van Oels to furnish all machinery and tools and equipment necessary to carry on the business, not to exceed the amount stated, the expense of constructing the switch to be paid from the undivided profits of the business; and that the parties entitled to salaries under the contract should not get over two thirds the amount named or agreed upon as salaries until the amount

assumed to be paid for the switch was paid out of the business.

No corporation has ever been formed. No legal entity, to be known as the Beaver Valley Sand & Gravel Company, has ever come into existence. The contract itself clearly did not establish or create such corporation, nor is it the contention of the defendants that a corporation was created by this contract. The bringing of this entity into existence, to be known as the Beaver Valley Sand & Gravel Company, was left by the tentative contract to the future. Whether it should be brought into existence at all depended upon whether certain plans and conditions specified in the contract were carried out to the satisfaction of both parties. The contract itself, supplemented by the disclosures made in this record, makes it apparent that the organization of the corporation was the first thing; that the taking of sand and gravel was to follow, and the selling and taking were to be the business of the corporation when ororganized. That it was the intention of the parties to incorporate is manifest by the testimony of all. That, when the writing was drawn, it was the thought of all that a corporation would be effected, cannot be doubted. These defendants, however, assumed, as this record shows, to act for this nonexisting legal entity, and to make contracts and do business in its name, and involve these plaintiffs in obligations against which they have no protection, except it comes to them through the courts. They assumed to remove the sand from the plaintiffs' premises in the name of this nonexisting entity, and to carry on a sand and gravel business in the name of the Beaver Valley Sand & Gravel Company, and this on the assumption that the plaintiffs are legally bound to the performance of the agreement so made. It is so apparent that in this they have no right, that it would hardly seem to be open to discussion. They claim, however, that the contract itself gives to these de-

fendants certain rights. This can only be on the assump-
tion that there exists between the plaintiffs and defendants
the relationship of copartners; that a copartnership exists;
that these defendants and these plaintiffs are members of
a copartnership; that a failure to agree upon a corporation,
or upon the terms under which they would incorporate, has
the effect, under this tentative contract, of creating that
which neither of the parties contemplated, and neither of
the parties has in fact consented to, to wit, a copartnership.

2. PARTNERSHIP:
the relation:
necessity for
contract rela-
tion.

It is true that, where there is an at-
tempt to organize a corporation, and the
parties fail to effect a legal organization,
but continue doing business under the cor-
poration name, they may be held as copartners. But this
would be only on the basis of estoppel, and against third
persons, but not as between themselves. Partnership is a
contractual relationship, and has its basis and founda-
tion on contract between the parties. It takes two parties
to make a contract. What parties contract to do, that is
what they are bound to do, in law. What they agree
among themselves to be, that is what they are, in contem-
plation of law, as between themselves. It was never con-
templated here that these parties should assume any part-
nership relationship, nor is there anything in the contract
to suggest that it was the thought of any of the parties to
it that a partnership relationship was created or would
exist, or that rights and duties were created between them
as such. Whether what has been done might estop either
of these parties to deny a partnership relation as to third
parties, is a question we do not determine; but certainly
there is no estoppel between the parties themselves, who
have acted with full knowledge of all matters, and in the
full light of the understanding of each, from which an es-
toppel against one or the other can be invoked. Contracts
entered into by the Van Oels, in the name of the Beaver

Valley Sand & Gravel Company, and contracts made by them in that name, by which the defendants sought to bind the plaintiffs, are not supported by any right conferred upon these defendants in the contract. An injunction looks to the future. It is to restrain what is threatened; and the evidence shows that these defendants contemplated proceeding further in the matter of making contracts in the name of the nonexisting entity, and are seeking to bind the plaintiffs and their property by those contracts. They are so clearly without authority in this matter that the court should have restrained them from so doing. To allow them to make contracts for the delivery of sand and gravel from plaintiffs' property, in the name of the Beaver Valley Sand & Gravel Company, is to permit them wrongfully to make contracts which might bind the plaintiffs to the performance of these contracts, and to subject them to liability for damages for a breach thereof, or at least to the annoyance of litigation. To allow them to purchase machinery and to install the same on plaintiff's land, in the name of the company, on the assumption that the plaintiffs were members of said company, and that the Beaver Valley Sand & Gravel Company was a copartnership, of which plaintiffs were members, would be to allow them to pledge the plaintiffs' credit to the discharge of obligations so assumed, and this without authority of the plaintiffs, and without the existence of a copartnership entity, in fact or in law, legally authorized to bind the plaintiffs.

We do not determine whether the court should have cancelled this contract or not, but of this we are certain: that the court should have enjoined the defendants from entering upon plaintiffs' land or removing any sand therefrom, or contracting to do so, and from making any contracts in the name of the Beaver Valley Sand & Gravel Company, and from purchasing any material in the name of the Beaver Valley Sand & Gravel Company, and from attempt-

ing to create any liability, or obtain any credit on account of these plaintiffs, or the Beaver Valley Sand & Gravel Company; and for this reason, the cause is reversed and remanded for decree in accordance with this opinion.— *Reversed and remanded.*

WEAVER, PRESTON, and STEVENS, JJ., concur.